E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JASON C. PANG (Cal. Bar No. 296043)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2652
    Facsimile: (213) 894-0141
    E-mail:   Jason.Pang@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**FILED**
CLERK, U.S. DISTRICT COURT

**1/17/2024**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ JB _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR  2:24-cr-00032-MEMF |
|       Plaintiff, | <u>PLEA AGREEMENT FOR DEFENDANT</u> <u>SAMMY SIMS</u> |
|          v. | |
| SAMMY SIMS, | |
|       Defendant. | |

    1.   This constitutes the plea agreement between Sammy Sims ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the investigation of embezzlement by defendant from Eastern International Bank.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

    2.   Defendant agrees to:

        a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the

Court, appear and plead guilty to a single-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with bank fraud in violation of 18 U.S.C. § 1344(2).

b. Not contest facts agreed to in this agreement.

c. Abide by all agreements regarding sentencing contained in this agreement.

d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g. Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h. Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately. The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

i. Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all

of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

j.   Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

k.   Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

3.   Defendant further agrees:

a.   To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or involved in the illegal activity to which defendant is pleading guilty (the "Forfeitable Property").

b.   To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Property and to the forfeiture of the property.

c.   To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Property, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Property.  If defendant submitted a claim and/or petition

3

for remission for all or part of the Forfeitable Property on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Property.  Defendant further waives any and all notice requirements of 18 U.S.C. § 983(a)(1)(A).

e.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Property.

f.   Not to claim that reasonable cause to seize the Forfeitable Property was lacking.

g.   To prevent the transfer, sale, destruction, or loss of the Forfeitable Property to the extent defendant has the ability to do so.

h.   To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

i.   That forfeiture of the Forfeitable Property shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

j.   That the Preliminary Order of Forfeiture shall become final as to the defendant upon entry.

k.   With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other

means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Property in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment.  Defendant acknowledges that forfeiture of the Forfeitable Property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

l.    Execute a Stipulation and Consent to the Issuance of an Order of Prohibition from Further Participation and consent to the entry of an Order of Prohibition from Further Participation ("Order of Prohibition") against him by the Federal Deposit Insurance Corporation.  Defendant acknowledges that the Order of Prohibition will prohibit him from participating in the conduct of the affairs of any insured financial institution pursuant to section 8(e) of the Federal Deposit Insurance Act, 12 U.S.C. § 1818(e), and the terms of the Order of Prohibition.

THE USAO'S OBLIGATIONS

4.    The USAO agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to

1  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

2  additional one-level reduction if available under that section.

3  d.   Except for criminal tax violations (including

4  conspiracy to commit such violations chargeable under 18 U.S.C.

5  § 371), not further criminally prosecute defendant for violations of

6  18 U.S.C. §§ 1005, 1028A, 1956, or 1957 arising out of defendant's

7  conduct described in the agreed-to factual basis set forth in

8  paragraph 11 below.  Defendant understands that the USAO is free to

9  criminally prosecute defendant for any other unlawful past conduct or

10  any unlawful conduct that occurs after the date of this agreement.

11  Defendant agrees that at the time of sentencing the Court may

12  consider the uncharged conduct in determining the applicable

13  Sentencing Guidelines range, the propriety and extent of any

14  departure from that range, and the sentence to be imposed after

15  consideration of the Sentencing Guidelines and all other relevant

16  factors under 18 U.S.C. § 3553(a).

17  NATURE OF THE OFFENSE

18  5.   Defendant understands that for defendant to be guilty of

19  the crime charged in the sole count of the Information, that is, bank

20  fraud, in violation of 18 U.S.C. § 1344(2), the following must be

21  true:  (1) the individual knowingly carried out a scheme or plan to

22  obtain money or property from a financial institution by making false

23  statements or promises; (2) the individual knew that the statements

24  or promises were false; (3) the statements or promises were material;

25  that is, they had a natural tendency to influence, or were capable of

26  influencing, a financial institution to part with money or property;

27  (4) the individual acted with the intent to defraud; and (5) the

28

financial institution was insured by the Federal Deposit Insurance Corporation or National Credit Union Administration.

<u>PENALTIES AND RESTITUTION</u>

6.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1344(2), is: 30 years' imprisonment; a five-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.    Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those charges.  The parties currently believe that the applicable amount of restitution is approximately $737,849.65 but recognize and agree that

this amount could change based on facts that come to the attention of the parties prior to sentencing.[1]

8.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

---

[1] The parties agree that this approximate restitution amount shall be offset by any payments made by defendant to victim Eastern International Bank pursuant to the terms of the civil settlement agreement filed in California Superior Court, Case Number 21STCV24528.

10.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

11.   Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 13 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning no later than February 2018, and continuing until at least April 2021, in Los Angeles County, within the Central District

of California, and elsewhere, defendant, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud victims as to material matters, and to obtain money and property, including funds and assets owned by and in the custody and control of Eastern International Bank ("Bank"), a financial institution insured by the Federal Deposit Insurance Corporation, by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

In September 2017, defendant was hired as the Chief Financial Officer ("CFO") of the Bank, which was headquartered in Los Angeles County.  As CFO of the Bank, defendant's responsibilities included administering the Bank's financial operations, including but not limited to:  pricing and financial analysis, profitability and performance analysis; budgeting for salaries; business expenses; regulatory and tax compliance; accounting; managing and implementing internal financial controls; and investments.  Defendant therefore had access and control to the Bank's financial accounts and records, Bank employee records and personnel information, and a Bank credit card.

As a condition of his employment, defendant signed a confidentiality agreement in which defendant agreed that he would not use confidential information, including bank financial information or methods of processes, for his own benefit or the benefit of others. Defendant also signed an agreement to abide by the Bank's personnel policy, which prohibited the defendant from falsifying any Bank record or report, or representing the Bank in any transaction in which he had any material connection or substantial financial interest.  Specifically, a material connection included the

involvement of any family member.  The Bank's personnel policy also required defendant to promptly disclose any conflicts or appearances of conflict with the interest of the Bank.

Between August 2018 and October 2020, defendant converted a total of $86,000 in Bank funds to his personal use by effecting wire transactions from a checking account owned by the Bank to the United States Treasury and California Franchise Tax Board to make payments towards defendant's personal income taxes and those of his wife, M.A. To conceal these transactions, defendant created false entries in the Bank's general ledger (referred to at EIB as "general ledger vouchers") fraudulently representing that the payments were for the Bank's own tax accounts.

On April 26, 2019, defendant converted $14,161.54 in Bank funds to his personal use by effecting a wire transaction from a checking account owned by the Bank to a debt collection agency as a payment towards the balance of defendant's own debt account with that agency. To conceal this transaction, defendant created a false entry in the Bank's general ledger fraudulently representing that the payment was for data processing software.

Between April 2019 and December 2020, defendant converted a total of $113,264.27 in Bank funds to his personal use by effecting wire transactions from a checking account owned by the Bank to J.P. Morgan Chase to pay the balances on defendant's personal credit card account.  To conceal these transactions from the Bank, defendant at times created false entries in the Bank's general ledger (referred to at the Bank as "general ledger vouchers") fraudulently recording those payments as Bank expenses.  For instance, on a February 13, 2020, Bank general ledger voucher, defendant falsely recorded a

payment of $3,469 as payment to one of the Bank's security vendors when, in fact, defendant knew the payment was sent to J.P. Morgan Chase to pay down the balance on defendant's personal credit card.

Between April 2019 and December 2020, defendant converted a total of $81,815.68 in Bank funds to his personal use by using a Bank credit card for his personal expenses and benefit, including to pay for a trip to Las Vegas and steak dinners.

The Bank paid for life insurance policies for certain employees. Between February 2020 and April 2021, defendant falsely informed several Bank employees that they had to switch their current life insurance policies to different carriers due to their age.  Some employees, relying on defendant's fraudulent representations, signed applications for life insurance policies that, unbeknownst to the employees or the Bank, defendant obtained through his wife, M.A., who was a licensed life insurance broker and received a commission for each life insurance policy she sold.  For some employees, without their consent, defendant obtained personal information from Bank records and submitted applications to purchase life insurance from his wife.  Defendant converted a total of $311,608.16 in Bank funds by effecting wire transactions from a checking account owned by the Bank to several life insurance companies to partially pay for the premiums for those policies.  When defendant was later confronted about the life insurance policies opened using the personal identifying information of Bank employees, to conceal his scheme, defendant falsely claimed that the personal identifying information of those Bank employees could have been obtained as a result of cybersecurity hacks on the Bank or from unauthorized disclosures by the Bank's personnel department.

In January and February 2021, defendant converted a total of $131,000 in Bank funds to his personal use by effecting wire transactions from a checking account owned by the Bank to a digital marketing agency to invest in a music concert.  To conceal the source of those funds, defendant fraudulently represented to the president of the digital marketing agency that the $131,000 came from defendant's sister and unnamed Chinese investors.

All of the above transactions were made without the Bank's authorization or knowledge and in contravention of Bank policies defendant knew of and had agreed to abide by in connection with assuming his position as CFO of the Bank.  Defendant used that CFO position, as well as the access it afforded him to the Bank's accounts and ledgers and confidential information of Bank employees, to carry out his scheme.  In total, defendant SIMS fraudulently converted at least approximately $737,849.65 of Bank property and money to his personal benefit and use.

<u>SENTENCING FACTORS</u>

12.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds

appropriate up to the maximum set by statute for the crime of conviction.

13.    Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | | |
|---|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) | |
| Loss Exceeding $550,000 | +14 | U.S.S.G. § 2B1.1(b)(1)(H) | |
| Abuse of Position of Trust | +2 | U.S.S.G. § 3B1.3 | |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

14.    Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

15.    Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

16.    Defendant understands that by pleading guilty, defendant gives up the following rights:

        a.    The right to persist in a plea of not guilty.

        b.    The right to a speedy and public trial by jury.

        c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

14

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

17.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK</u>

18.   Defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment

imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $737,849.65; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

19.   Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

20.   This agreement does not affect in any way the right of the USAO to appeal the sentence imposed by the Court.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

21.   Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds

16

in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

22.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

<u>EFFECTIVE DATE OF AGREEMENT</u>

23.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

<u>BREACH OF AGREEMENT</u>

24.  Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and

defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

25. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any

1  evidence derived from the statements should be suppressed or are

2  inadmissible.

### COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

### OFFICE NOT PARTIES

5       26.  Defendant understands that the Court and the United States

6  Probation and Pretrial Services Office are not parties to this

7  agreement and need not accept any of the USAO's sentencing

8  recommendations or the parties' agreements to facts or sentencing

9  factors.

10      27.  Defendant understands that both defendant and the USAO are

11  free to: (a) supplement the facts by supplying relevant information

12  to the United States Probation and Pretrial Services Office and the

13  Court, (b) correct any and all factual misstatements relating to the

14  Court's Sentencing Guidelines calculations and determination of

15  sentence, and (c) argue on appeal and collateral review that the

16  Court's Sentencing Guidelines calculations and the sentence it

17  chooses to impose are not error, although each party agrees to

18  maintain its view that the calculations in paragraph 13 are

19  consistent with the facts of this case.  While this paragraph permits

20  both the USAO and defendant to submit full and complete factual

21  information to the United States Probation and Pretrial Services

22  Office and the Court, even if that factual information may be viewed

23  as inconsistent with the facts agreed to in this agreement, this

24  paragraph does not affect defendant's and the USAO's obligations not

25  to contest the facts agreed to in this agreement.

26      28.  Defendant understands that even if the Court ignores any

27  sentencing recommendation, finds facts or reaches conclusions

28  different from those agreed to, and/or imposes any sentence up to the

maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

29.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

///

///

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

30. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

_____          December 14, 2023
JASON C. PANG                             _____
Assistant United States Attorney          Date

_____          12/14/2023
SAMMY SIMS                                _____
Defendant                                 Date

_____          12/14/2023
ALAN EISNER                               _____
Attorney for Defendant SAMMY SIMS         Date


CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences

of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          12/14/2023
SAMMY SIMS                                Date
Defendant

CERTIFICATION OF DEFENDANT'S ATTORNEY

    I am Sammy Sim's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this

22

1  agreement is an informed and voluntary one; and the factual basis set

2  forth in this agreement is sufficient to support my client's entry of

3  a guilty plea pursuant to this agreement.

4  _____          12/14/2023
                                            _____
5  ALAN EISNER                              Date
   Attorney for Defendant SAMMY SIMS